The next case on this morning's calendar is No. 21-4, Van Vorst v. Lutheran Healthcare May it please the Court Unlike federal law, the city human rights law begins with the presumption that every accommodation is reasonable unless it imposes an undue hardship Two facts in this case are undisputed. First, the four deaf plaintiffs wanted a sign language interpreter when signing consent forms at Lutheran Hospital And second, Lutheran has never asserted undue hardship Well, actually, let me ask you about that. I mean, Mr. Mankin stated that he did sign a consent form and stated that ASL interpreters were provided And then there was another instance in which he had said there was no interpreter, but in fact he recalled later that there was an interpreter So it seemed to me that the record, as Judge Corman found, showed that there were instances in which interpreters were provided There were efforts made to accommodate, and in some cases no interpreters were requested I mean, it doesn't seem to me that the record is quite so clear as you're just making it out Am I misconstruing something? Yes, so what we're asking this Court to do is for the 70 consent forms that we cited in our brief There was no evidence that an interpreter was offered, and there was no evidence that they were provided Per the hospital's policy, per city and state law They're actually required to be offered sign language interpreters so that they can communicate these consent forms And there are records that are regularly kept in the course of business That if there is a refusal, that that offer of interpreter and the refusal should be documented in the specific form of the record And for the 70 consent forms that we are asking this Court to overturn as a judgment as a matter of law Those 70 consent forms, there was no offer, and they were entitled to sign language interpreters for those consent forms You said there was no evidence, but you represent the plaintiffs who had the burden Was there evidence that they were not provided? My understanding from Judge Corman's opinion is that there was evidence provided as to only three In terms of actual testimony So it's actually the defendant's burden to show that they did not offer and provide an interpreter Because it is undisputed that for these consent forms that the plaintiffs in this case made a request And required a sign language interpreter for consent forms So you're saying the defendants had the burden to come in and provide evidence that they did provide interpreters for the 70? Yes, or that there was a refusal And if we look at our brief, we say that as a matter of business practice They are required by their own policies and procedures and by city and state law To make an offer of a sign language interpreter And there's a specific form that if there's an offer, it must be documented There's a specific form that if there's a refusal, it must be documented These are business documents in the ordinary course of business When you say refusal, you mean decline? They decline the interpreter? They did not decline the interpreter There's no evidence that they declined the interpreter I'm just trying to clarify, when you say refusal, is that what you mean? That there has to be evidence that they declined? Yes, all declinations Are you saying that with regard to each That the forms, that each of the four plaintiffs Regardless of their facility with English And regardless of whether they requested an in-person interpreter The hospital was required to offer one And obtain a form that declined it if they didn't provide one Is that right? Regardless of whether they were requested to provide one And regardless of whether someone was communicating effectively in English Is that right? Correct Once it is identified that the person is deaf And they are required to offer a sign language interpreter And if it's declined, they need to document it Per their own policies and business records and per city and state But that's based on the 2018 Human Rights Commission publication, right? No, these are based on laws that predate And those are outlined in our brief That they are required to be offered these And declinations must be documented in the record Could you address a different question? I was a little confused by the complaint, by the briefing here That there's a disparate treatment claim And a failure to accommodate claim They seem to really merge together And that seems to be how the trial proceeded That if you are inadequately accommodated Then you've been treated less well And that being treated less well is inherently discriminatory Are they separate claims? Or is there one obligation imposed on the hospital To provide the needed accommodation Absent undue hardship for anyone who comes in with a disability Such as your client's had of a hearing impairment Is it basically one standard When we kind of look at it all together Or are there separate obligations? Well, they could be seen in both ways And I can explain why As to differential treatment Hearing people can communicate in their primary language And fully participate in their care And they don't have to resort to a second language Or a language that they are not competent in But deaf people Some hearing people speak multiple languages They speak Spanish and English One might be stronger, one might be worse And so if somebody is fluent in Spanish and English But nonetheless prefers to proceed in Spanish Your view is that they are entitled to a Spanish interpreter Under the New York Human Rights Law? No So why would that be any different than for somebody Who is a very proficient lip reader And also knows American Sign Language? Well, here we have expert testimony That is unrebutted in this case That one of our clients is functionally a lip reader No, no, but I'm just asking My question is not about the record My question is about your view As to what the New York Human Rights Law requires The New York Human Rights Law would require That a deaf person be able to communicate In their primary language That is what they're most comfortable And they have a specific choice That they should be given primary consideration To their choice Unless another equally effective means of communication So they would be treated better, in other words Than a person who speaks English and Spanish But prefers to proceed in Spanish with an interpreter Right? You just said that they're not entitled to a Spanish interpreter Even though that might be their preferred language Well, the key here is Are they able to communicate? Are they able to communicate? Are they able to communicate? Okay, so if that's the issue I mean, it seemed that the evidence at trial Indicated that the four plaintiff witnesses Were able to communicate Or there really seemed to be only a dispute With respect to three or four of their consents Would you agree with that characterization? No I see you're shaking your head, so apparently not There actually is no evidence And the reason I go back to the expert report Is because they can communicate Either at a first or second grade level Or at no level at all And the strongest communicator was The third or fourth grade level Wait a second, wasn't there evidence That one of your clients had reviewed An extensive deposition transcript And edited and commented And remarked on various aspects of the transcript That struck me as much more than A third or fourth grade level of fluency And commentary and skill Is that wrong? So, for instance, if I can speak basic Spanish And then I can communicate in advanced English If I'm being forced to communicate in Spanish And not in my primary or preferred language And I'm having extreme difficulties Fully understanding everything that's being said I'm being treated differently By being forced to result in a lesser language here And so, if you look at the evidence If you look at the expert reports If you look at the testimony If you look at everything else The plaintiffs here have very, very weak English And there's no way, according to our unrebutted expert testimony That they could communicate these informed consent forms Doesn't it appear that the jury found otherwise? The jury found that they were able to communicate Through all aspects of their care However, the evidence does not support that Because if you look at the expert testimony If you look at their testimony Why should a deaf person have to be forced to communicate At a first grade English level An informed consent form If the law requires that they are able to communicate In their primary language as ASL When they communicate in a much more advanced level These services are readily available And should be offered to them So that they can communicate fully All right, you've reserved two minutes of rebuttal Thank you very much We'll hear from the hospital Good morning, your honors May it please the court My name is Roy Breitenbach And I represent the After Lee Lutheran Medical Center Appellants here seek to rewrite history Up until the jury returned its verdict This lawsuit was about a single issue Whether or not the four appellants Could effectively communicate with the hospital's medical staff About their treatment At trial, the jury heard extensive evidence That each of these four appellants Could effectively communicate With the hospital's medical staff Even where there was no interpreter present That evidence included testimony About each of the appellants' ability To communicate in all aspects of their lives In significant circumstances Without sign language interpreting services Including, for example, in the case of Mr. Monkin In situations where his regular primary care physician Who he saw every month for 20 years And was not a Lutheran provider Was outside in the community Never provided him with a sign language interpreter Even after, 20 years after The Americans with Disabilities Act was passed And an obligation to provide interpreters If it was needed And there were constant stories like this With each of the appellants I think your point is that The trial was about whether or not Exactly And it has morphed now into a legal argument As to whether the New York Human Rights Law Requires the production Of an American Sign Language interpreter Anytime a deaf person appears Precisely, Your Honor And we don't agree that that's the correct interpretation Of the New York City Human Rights Law Particularly at the time in which these events occurred Because it's prior to the guidance And we made our own Well, I guess the first question is Is that a correct interpretation of the complaint And of what the plaintiffs were alleging? Well, I think that it's clear from the beginning to the end That if you look at their complaint And you carry it all the way through to the jury instructions That they did not object to That the trial, the key issue with the trial Was about effective communication And the jury concluded in all circumstances There was effective communication I mean, you know, with regard to these 70 consent forms 66 of them Plaintiffs had a two-week trial Had free reign to provide whatever testimony they wish Judge Corman did not put any constraints on them No testimony was taken by plaintiffs As to 66 of those consent forms They were just included and pulled out of the medical record at closing Of the four consent interactions That plaintiffs chose to talk about Or maybe that we chose to talk about Because in some instances We were the ones who raised them Not plaintiffs We presented evidence That there was effective communication In those circumstances In the situation with Mr. Wiener and his toe Mr. Wiener actually admitted on cross-examination That he knew precisely what was going on With regard to Ms. Van Voorst And also her foot And the potential for amputation Ms. Van Voorst, you know There was extensive testimony That the podiatrist who she had seen over 250 times For 20 years Had adequately explained all her care Similar incidents in the past He testified unrebutted That she understood exactly what he was saying Could you speak to the New York City Human Rights Law Cooperative dialogue requirement And whether I didn't see That the jury instructions made any reference to that It seems like an important thing to An obligation to comply with Did that just disappear during the course of trial Or where did that go? Well I think because Your Honor The way we view the case I think the way Judge Corman viewed the case Was you don't If we can If it's established that there was effective communication Whether or not Or what the reasonable accommodation was Is kind of irrelevant Because there's no need for a reasonable accommodation And the issue about whether or not There should or should not have been a dialogue Whether or not we should have given Primary consideration to their request Is all irrelevant Because of the fact that There was no need for effective communication But the cooperative dialogue requirement Seems to take into account The disabled individual's preferences And so if you have a hearing impaired individual Who would really like to have an ASL interpreter there There may be some obligations At least engage in a conversation about that Well and on that point Your Honor Based upon our policy The testimony at trial was that In the overwhelming majority of circumstances Plaintiff's wishes for an interpreter Were honored Okay What we're talking about here About the times when there was no interpreter Is a small fraction of a lot of different circumstances There are situations with Particularly with Mr. Wiener and Mr. Monken Where their testimony was I never received an interpreter And on cross-examination They were confronted with times and times and times In which there were documented issues of interpreters And those documentations were not the hospital's records But were actually from records of outside sources You know from the From let's say the VRI Video Remote Interpreting Vendor Who tracks the minutes Because that's how they charge the hospital And things like that So there were all these circumstances What we're talking about here Are incidents in which Whether or not In some cases Plaintiffs actually did decline the use of an interpreter That's in the record Or for whatever reason There was something that Prevented the VRI from working properly And there was testimony at trial About the hospital's efforts over time To improve that And of course now as Judge Korman noted In his decision There is no injunctive relief here Because the hospital is now part of NYU And the system is vastly different In terms of providing an interpreter and everything So what we're talking about Is instances where for whatever reason Because of appellant's preferences Because of glitches Just because they were dealing with appointments On a provider who always communicated with them Without an interpreter There were no interpreters But certainly in this case There was ample evidence of interpretive service I'd also like to address I know my colleague here Raised a significant issue About unrebutted expert testimony And I don't think that's accurate To say that it was unrebutted expert testimony What occurred here was The expert rendered an opinion As to their reading level The appellant's reading level Based upon an in-laboratory type Analysis of their reading In a vacuum She was cross-examined about that Bias issues were raised about the relationship Between her and plaintiff's law firm And then the jury heard testimony That notwithstanding what she opined About their reading ability And communication ability The jury heard extensive testimony About these plaintiff's abilities For example, the issue of the deposition transcript Judge Carney Why that's significant is Mr. Wiener testified That he was sent home from an emergency room visit Not understanding the discharge instruction That if he had further pain He was suffering from, I believe it was a kidney stone If he had further pain He should come back to the hospital And seek further attention He was given written discharge instructions That said that in English, that line He contended at trial I didn't understand that Okay, and he said Because I have a very small reading level The deposition transcript was offered In rebuttal of that That if you say you cannot understand a single line And that essentially was what the expert's testimony was How can you take a 107-page transcript And make the corrections that you made? He also said that he only understood 25% of his deposition When he was cross-examined And he was confronted with testimony So those issues raise significant credibility concerns I think on the jury's part I think the conclusion here, Your Honor Is what the jury did was Is the jury looked at the totality of the evidence Regarding effective communication And what plaintiffs are doing here Is at the end of the day Taking these 66 issues where And they're just asking the court to say Well, automatically Because there was no interpreter That's it And that's not what the law is And that's not what the facts are here The jury heard extensive evidence That when there was not an interpreter There was effective communication That's what the jury heard As Judge Corman said It was incumbent upon appellants To then come forward And to present evidence as to That they didn't understand And persuade the jury on that fact And they failed to do it As Judge Corman noted in his decision Even on the four instances In which they did talk about the consent forms They never asked It involved three of the plaintiffs Ms. Soto, no consent forms Regarding her were ever produced Were ever discussed at trial For the three plaintiffs In which there were consent forms They never asked those plaintiffs Whether or not they understood The consent process There was no testimony about that So there was a failure of testimony There was sufficient evidence Of effective communication The hospital has a policy The hospital made good faith efforts To comply with that policy Which we would say Would be over and above the law And for all those reasons We urge this court To uphold the jury verdict And deny the appeal Thank you Thank you Mr. Brzezinski You have two minutes of rebuttal If the court were to uphold Judge Corman's decision It would be Have disastrous consequences For the deaf community in general I think you've got to stick to What the case was about And so this complaint The complaint alleges up front That the defendant discriminated against plaintiffs By refusing to provide reasonable accommodations For their disability Despite their repeated requests For effective communication Defendant discriminated By failing to provide On-site ASL interpreters When necessary And it seems to me That the trial was about Whether or not it was necessary And that after the verdict came in It has now become a different dispute About what the New York Human Rights Law requires Whether it's necessary or not And aren't you locked into your complaint I guess is my question Well What the trial testimony showed That they were necessary for consent forms But that's a factual dispute, right? It's also a legal one as well Because But did you move for summary judgment? If it was a legal dispute That could have been resolved Without a jury trial, presumably We didn't move for summary judgment And But We did move for judgment As a matter of law Because the testimony showed That They required A sign language interpreter To fully participate in their care As an example Just because someone in a wheelchair Can pull themselves up Five flights of steps Doesn't mean that they have to Because a reasonable accommodation is given These people have very limited English abilities And to force them to resort To those very limited English abilities For consent forms But again That seems to be the factual dispute That the jury was asked to decide What you seem to be saying on appeal Is that The mere fact that they are deaf Entitles them to these accommodations Regardless of whether they need them Regardless of even whether they ask for them Is that wrong? Unless it's an undue burden From the hospital And it's their burden to show That it was an undue burden And they have said That it's not an undue burden To provide sign language interpreters Yeah, I don't think undue burden Is really the issue here Nobody's arguing undue burden The issue is whether this is necessary And or required And that's why you have to go to the statutory text Of the New York City Human Rights Law Which says every accommodation is reasonable Unless it's an undue hardship And so If a sign language interpreter is reasonable And there's no undue hardship A sign language interpreter should be At least offered Or given And if there's a refusal Obviously it wouldn't apply But as If you look at the statutory text It is required to be provided To be offered to deaf folks Unless an undue hardship Or unless there's a refusal And we don't have either here And that's why As a matter of statutory construction And the law here It's for good reason Because public policy shows That if you don't offer them An interpreter Then they're going to have to result To these Less effective means of communication And they're not going to be able To fully communicate In a manner That would provide them The fullest scope of communication And by that alone It's discrimination Because they have to communicate In a lesser form Thank you While non-disabled people Don't have to Thank you Thank you very much We will reserve decision